GRIMES, Acting Chief Judge.
The sheriff appeals from a final order denying forfeiture of a jeep involved in a drug transaction. The order reads as follows:
THIS CAUSE having come to be heard upon the Petition for Rule to Show Cause and for Final Order of Forfeiture of JIM D. HARDCASTLE, SHERIFF OF SARASOTA COUNTY, and the Court having been advised in its premises, it is
Findings of Fact
Special Agent Cornelius of the Florida Department of Law Enforcement met with Rudolph Kratz several times about purchasing two kilos of cocaine. At these meetings, the cocaine was to be delivered from Kratz to Cornelius through a Confidential Informant. On the day of the transfer, the Confidential Informant drove to Pete Reynard’s Restaurant, Holmes Beach, Florida in his B.M.W. automobile. Kratz arrived in his 1977 Jeep Cherokee Wagon. After a short conversation between Kratz and the Confidential Informant, Kratz left the restaurant and drove the 1977 Jeep Cherokee Wagon to his residence located in Holmes Beach, Florida. He went into the residence and then returned to the Jeep and drove back to Pete Reynard’s restaurant where he met again with the Confidential Informant. While Kratz was away from the restaurant, the Confidential Informant was searched by a special agent of the FDLE and he was clean. *1028 His B.M.W. automobile was not searched. After the meeting with Kratz, the Confidential Informant immediately drove to the Manatee-Sarasota Airport where he turned over the cocaine to Agent Cornelius. The Confidential Informant and Cornelius then drove to FDLE headquarters in Sarasota and Special Agent Trubey then tested the suspected cocaine with a reliable field test and the results were positive. After the cocaine was delivered, Agent Cornelius had a phone conversation with Kratz and complained about the quality of the cocaine and Kratz told him that if he didn't like it he could return it and they would try for better stuff the next day. Thereafter Kratz was arrested in Sarasota County and the 1977 Jeep Cherokee seized.
Issue: Whether the 1977 Jeep Cherokee Wagon was significantly involved in the furtherance of an illegal drug operation and is therefore liable to forfeiture.
Findings
The Confidential Informant did not testify and there was no testimony that Kratz ever had the cocaine in the Jeep, although there is an inference that Kratz picked up the cocaine at his residence and delivered it to the Confidential Informant at Pete Reynard’s. There was no showing of a nexus between the illigal [sic] cocaine delivered and the 1977 Jeep Cherokee,
it is hereby
ORDERED AND ADJUDGED:
1. That the Petition of JIM D. HARD-CASTLE, SHERIFF OF SARASOTA COUNTY, for forfeiture of the 1977 Jeep pursuant to Florida Statutes, Sections 932.701 through 932.704 is denied.
DONE AND ORDERED this 6th day of April 1983, in Sarasota, Florida.
Because the findings of fact are supported by the evidence, we accept them for purposes of this appeal. However, we hold that as a matter of law the court erred in reaching the findings drawn from these facts.
The Florida Contraband Forfeiture Act directs the forfeiture of any motor vehicle used in violation of section 932.702, Florida Statutes (1981). Subsection (3) of that provision makes it unlawful:
[t]o use any vessel, motor vehicle, or aircraft to facilitate the transportation, carriage, conveyance, concealment, receipt, possession, purchase, sale, barter, exchange, or giving away of any contraband article. (Emphasis added.)
Apparently, the court below was under the impression that the jeep could be forfeited only if the sheriff were able to prove that the cocaine had been in it. There is some authority for this position. Certain federal courts have construed 49 U.S.C. § 781, which contains the same wording as section 932.702, as authorizing the forfeiture of only those vehicles which serve as the site of a drug transaction or are used to transport the contraband itself. Howard v. United States, 423 F.2d 1102 (9th Cir.1970); Platt v. State, 163 F.2d 165 (10th Cir.1947). On the other hand, there are at least two district court rulings upholding the forfeiture of an automobile simply because it was used to transport a key figure to the site of a drug transaction. United States v. One 1941 Pontiac Sedan, 83 F.Supp. 999 (S.D.N.Y.1948); United States v. One Dodge Coupe, 43 F.Supp. 60 (S.D.N.Y. 1942). Cf. United States v. One 1977 Cadillac, 644 F.2d 500 (5th Cir.1981), which implies that a vehicle used to transport a dealer to the site of drug sale negotiations might be subject to forfeiture under 49 U.S.C. § 781.
The only Florida case to confront this issue is In re Forfeiture of 1979 Toyota Corolla, 424 So.2d 922 (Fla. 4th DCA 1982). There, German Mora had driven a Toyota automobile to a grocery store parking lot to meet an undercover detective. At the parking lot, he got into the detective’s vehicle where the parties agreed upon a drug sale. Mora’s accomplice then arrived and handed a bag containing cocaine to Mora who delivered it to the detective. The Toyota was neither the site of negotiations nor the repository of the cocaine. Neverthe *1029 less, the court affirmed an order forfeiting the Toyota and stated:
The real issue in this case is how little a nexus is necessary to make a vehicle subject to forfeiture. In this case, we have no question of the following things: a drug deal was made; Mora was a key figure in the deal; the deal was to be consummated in a parking lot; Mora drove the car in question to the parking lot to consummate the criminal transaction. Given those facts, we hold that is all that is necessary to warrant a forfeiture of the car in question. By using his car to transport himself to the site of a drug transaction, Mora used the car to facilitate the consummation of the transaction.
424 So.2d at 924.
In the instant case, Kratz agreed to sell cocaine to agent Cornelius through a confidential informant. Kratz drove to Pete Reynard’s Restaurant in the jeep. After meeting the informant, Kratz drove the jeep back to his residence in Holmes Beach and returned in the jeep to the restaurant where he again met the informant. The informant then proceeded directly to the airport where he delivered cocaine to Cornelius. Any doubt concerning whether Kratz supplied the cocaine was dispelled by his telephone conversation with Cornelius the following day. While the evidence did not unequivocally place the cocaine in the jeep, the record clearly reflects that the jeep was used to transport cocaine or to carry Kratz to and from the transaction site. In either event, the jeep was used to “facilitate” the sale of the cocaine.
We do not overlook our recent decision in City of Clearwater v. One 1980 Porsche 911 SC, 426 So.2d 1260 (Fla. 2d DCA 1983). There we held that an automobile driven from Clearwater to the Tampa Airport by a drug dealer who flew to North Dakota to consummate a marijuana sale was only remotely incidental to the drug transaction. Here, the jeep was more closely related to the cocaine sale in that, at the very least, it was used by Kratz as his sole means of transportation to and from the place where the cocaine changed hands.
We reverse the order and remand with directions to enter a judgment of forfeiture.
DANAHY and CAMPBELL, JJ., concur.